And so, if counsel is ready to proceed, you may begin. Good morning, Your Honors. And may it please the Court. My name is Bridget Acy. I represent the plaintiff appellants in this case. I'd like to reserve three minutes for rebuttal, please. The decision below should be reversed and the plaintiff's claim should be allowed to go forward. Before turning to the merits, however, I'd like to begin with the issue raised by the panel in its April 12th order, namely whether the record sufficiently demonstrates that Section 1332D's amount in controversy requirement is met here, citing Moe v. Geico. The amount in controversy requirement is readily met here, and I'd like to start my explanation of why by emphasizing a key difference between this case and Moe. Moe was a removal case under the Class Action Fairness Act, or CAFA. The defendant had removed to Federal court, and in those cases, Section 1446 sets up a process for assessing jurisdiction when the defendant's allegation of the amount in controversy is questioned. 1446 — Sotomayor, let me ask you, counsel, assuming that the booking conditions are a valid and enforceable contract — Yes, Your Honor. — what duty or obligation did Global Travel breach? The obligation that Global Travel breached was its obligation to refund the prepaid  Well, let me ask you, where in the contract does Global Travel promise to provide full refunds for trips that don't take place as scheduled? There's multiple parts of this contract that talk about the circumstances under which a traveler would forfeit all or part of the fee. There are at least six different places in the contract that discuss when a refund would be limited, starting at paragraph 2 and — actually, starting at paragraph 1 and going through the standard cancellation policies. None of those circumstances that specifically in the policy limit a refund of the prepaid fees happened here. These trips did not go forward. But, Ms. Acey, the standard cancellation policy that's referred to here does not refer back to any specific conditions. Why shouldn't we read this as a general cancellation policy for any of the covered cancellations as well as any other time that either party wants to cancel? The standard cancellation policy only applies to student cancellations. That was not disputed by Global Travel below, and that is how the entire standard cancellation policy is framed. Where is that? Where is it limited? I'm looking at it. How is it limited to students? If you're looking at ER — ER-463, 462? Correct. Or 464? It is phrased in terms of you canceling. So the first little bullet — the first sub-bullet, no refund will be issued should you cancel 30 days or less. Cancellations must be made in writing to our office. We strongly recommend that you consider purchasing our trip protection program. So this policy — and this was not disputed below — that this policy governs when a traveler cancels. It doesn't provide for any provisions for when the trip itself does not go forward. And that's reflected in other provisions of the policy that interpret it. So, for example, paragraph 2, which is on ER-460, says, I understand that if the school declares me ineligible to participate, my cancellation is subject to the refund policy in the standard cancellation policy. But aren't we folks — or shouldn't the folks be on condition number 7? It says the company shall have the right at any time in its discretion and without liability or cost to cancel any trip or portion of a trip or make an alteration in itinerary or trip being rendered unsafe. Why isn't that the main controlling provision here? It is a relevant provision here, Your Honor, absolutely, and it is what global travel relies on. But it does not give them a right to withhold the prepaid trip fees. Again, this — So how do you construe without cost? So I mean, it seems to me — and you've cited the case of Unruh Education Travel Services where there was a refund, but they were entitled to deduct the cost they had. Your argument is, here, they get a full refund, no offset, correct? That is our argument. Because this contract does not allocate any risk of loss to the students in the case of what essentially happened here, which is a force majeure type event. They could have put that clause in the contract. They didn't. I mean, without liability or cost is best construed as protecting global travel from consequential damages, penalties, liability for other damages that could be incurred when a trip is canceled. But it does not — I think it's critical that this paragraph says nothing about the refund policy. And again, if you look at paragraph one — Well, I guess that depends on what we make of without liability or cost. Those are pretty strong terms. Under Montana law, for this contract, which is a contract of adhesion, it has to be interpreted most strongly against the drafter, which is global travel. And when they put together this contract that in multiple places explains when the standard cancellation policies limits on refund explicitly provide, in paragraph one, in paragraph two, I think it's in paragraph 17 as well, there's at least five different places in here where there's a specific cross-reference or a specific reference to refunds. Nothing in paragraph seven. Under Montana law, that ambiguous — even if it's considered ambiguous, and I don't think it is — could not be construed so harshly. Their position is, under this paragraph, we can wholesale cancel a trip that's been fully paid for, for any safety reason, no obligation to reschedule, no obligation to pay any refund whatsoever. And was the trip canceled or postponed? I don't — Your Honor, I don't think those terms are inconsistent, and in fact, neither does global travel. I would point the Court to — to ER-363, which is an email from Global Travel in the spring of 2020 that says the trip was, quote, canceled slash postponed due to CDC and government travel restrictions, and goes on also at ER-363 and 365 to refer to the trips being, quote, canceled due to the pandemic. But this — I guess this raises another question, given this posture as a putative class. Each of the plaintiffs did something different. Some of — some of them appear to have been the first movers, or at least with respect to — that they'd canceled after they tried to negotiate. They're all kind of differently situated. How does — I mean, is your position here that, with respect to every one of the plaintiffs at issue, Global Travel was the one who canceled? Our position is that the — there's a class claim here for travelers who were enrolled in trips in the spring of 2020 that did not go forward, were canceled due to the pandemic, and who received less than a full refund. And that is five of the six — the situation of five of the six of the named plaintiffs. The fact that some received 50 percent and some received 70 percent, that's just a mechanistic damages calculation. The breach by Global Travel was refusing to offer them a full refund. I'd like to go back, if I may, to the standard cancellation policy to another point about it, which is — Just on the — you talk about a mechanistic damages calculation. Isn't that precisely what the standard cancellation policy provides? If the traveler cancels — again, that policy governs when a traveler is cancelling for personal reasons, the kinds of reasons that they could insure against. I mean, I think it's also notable that the standard cancellation policy includes this protection plan, which allows you to insure against cancellations for personal reasons, actually doesn't cover pandemic cancellations. So if a student is signed up to take this trip to Washington, D.C., and COVID happens, and then it's postponed to the next year, or they say, we're going to reschedule, and one of the students or parents then says in response, I'm out, I cancel, or in so many terms, is it your position that that's not the student canceling, that that's global travel canceling? Yes. It's our position. Again, as they said in the spring of 2020, the trips were canceled. The students did not cancel from the trips. The trips themselves did not go forward. If you in fact — if global travel were going to be consistent and say these trips that happened in the spring of 2021 were the same trip, it is the exact same trip, then these students were — I apologize. Go ahead. I'm sorry. These students were denied the standard cancellation policy because that allows them a refund 90 days before departure. What is your best argument, though, to support that the booking conditions are so unreasonable that they are unconscionable? Because that's what you're asking us to determine, correct? That's a pretty high standard. Our first line is actually not that the court has to hold them unconscionable. It's that under Montana law, they have to be interpreted most strongly against global travel and in favor of the consumer. That is a statutory requirement for interpreting this contract under Montana law. And that language, without liability or cost, to construe that to mean no refunds if we wholesale cancel a trip for a safety reason, no matter what we might — whether we rescheduled or not, that's the interpretation that the court would have to adopt. Ms. Acy, I guess if — given that, I want to segue back into the jurisdictional question because I do want to make sure I'm clear on your math. The claim here — there were partial refunds in most of these cases, right? For the named plaintiffs, there were partial refunds. Okay. Well, that's what we've got to work with. Right. The claim, then, is for the difference between what was paid and what was already paid out as a refund. Over 1,500 class members. Yes, Your Honor. How does that add up to $5 million? Okay. So, I'd like to start with the math and then go back to the standard. Good. Thank you. I've got my pencil ready. First of all, although we — at the class certification stage, which was well into the case and after other issues had been briefed and there was a motion to dismiss, there's a discussion of over 1,500 class members. Jurisdiction is tested at the time of the filing. The complaint alleges thousands of tours were sold to class members. And that is, in fact, backed up by later discovery. The Court looks at ER 466 to 67, shows that there were over 60 trips in this time period with over 2,900 participants. So first of all, for a jurisdictional inquiry that's looking at the time of filing, the starting point is much higher. And even if the damages are, you know, $1,000, $2,000, there's a — one plaintiff in this case got none of their money back because the trip was — they took a voucher which they couldn't sell. So again, in the jurisdictional inquiry, thousands of dollars per plaintiff. And under Montana law, under the Consumer Protection Act, those damages can be trebled. Also under the Consumer Protection Act — Do you have — what's your authority for trebling damages in a CAFA situation under state law? If the question goes to whether that's included in the amount in controversy, again, this makes me — takes me back to the actual standard for this case, which is an original jurisdiction case, not a removal case. So the jurisdictional question is consistent with NAFI, which is a diversity case that explains the standard for original jurisdiction. It's a very generous standard. The legal certainty test, where the plaintiffs invoke Federal jurisdiction, their allegation as to the amount in controversy controls unless it appears to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal. So plaintiffs asked for treble damages. They are available under Montana law. Plaintiffs asked for attorney's fees, which would also be included in the amount in controversy. And in a class action, 25 percent is a contingency amount. Also, under Montana law, that is potentially recoverable. But you would agree that without your Montana Consumer Protection Act claim, you don't meet the $5 million, correct? I'm not sure that I would concede that, Your Honor, although the Court doesn't have to address that. Again, because — Because, I mean, you're relying on treble damages. And if my math is correct, you're far short, unless you get treble damages, which are only available under the Montana Consumer Protection Act, right? And I think, Your Honor, this goes back to the standard, the legal certainty standard that's looking at the time of filing, 2,900 potential — thousands is what we alleged, and it gets you to 2,900. If it's $2,000 a person, that gets you to 5.8 million. And, again, the question is not what would plaintiffs likely recover or what developments happened after filing that might affect the amount. The question is at the time of filing, what was alleged you could take. I think the odd thing about this is that the Montana Consumer Protection Act forbids class actions, and you're relying on that to form the basis of your class action fairness jurisdiction. Your Honor, the Consumer Protection Act restricts bringing class actions in state court. No, I understand there's an argument that Rule 23 preempts the Montana Consumer Protection Act prohibition on class actions. But in every case I've seen that's come up, and there have been some decided by the district courts, the district court makes the decision that it's preempted. And here, you're relying on a statute that forbids class action, but you need the class action to get to 5 million. So I find it a little puzzling. I didn't realize that the other side didn't raise this, or you're hitting it for the first time today, but it is jurisdictional. It is jurisdictional. I see that my time is up. You can answer if you'd like. It is jurisdictional, but again, the test of what the court is assessing in terms of whether that requirement is satisfied is whether it was alleged in good faith by the plaintiffs and would not appear to a legal certainty that it's impossible for them to recover. When you come back, could you just be ready with, where should we look in the complaint, where the allegation of the amount is? Absolutely, Your Honor. I believe I did run through my time, but if the court allows rebuttal, I'll give you a couple minutes. Thank you. Thank you. Thank you. May it please the Court. My name is Ian McIntosh. I'm here today with Kristen Meredith and Mack Morris, and we represent Global Travel Alliance. The district court's decision in this case, both granting summary judgments to Global Travel and also denying the class claims, was absolutely correct based on the record before the district court. And I specifically emphasize that term, based on the record before the district court, because plaintiffs have hired new appellate counsel, and they're completely trying to recast their argument, and they're completely restating and misstating the facts down below. I want to start off talking about one of the most obvious misstatements that they're making. Mr. McIntosh, I wonder if you could start with the jurisdiction piece that we just left and asked you about. Sure. That's the easy piece. We will leave that to last. I know it's a bit unusual on an appellate argument, but may I approach so that we can avoid math? No. No? No? Okay. Okay. There will be math then. Okay. Okay. So if you look at — And is your — what's your — to start out here, do you argue that there is or isn't jurisdiction? There is. Yes. That's one point we agree on. There is — there is CAF jurisdiction. And so if you look at ER 258 to 260, that goes through the amount being claimed by each individual plaintiff. And Your Honor, you were exactly correct. It is just the amount of refunds that we're talking about here. But if you look at the original six named plaintiffs and the amount of refunds they're seeking, the average of that is $1,392 being sought per person. Then if you look at ER 466 and 467, you will see an early estimate of the number of class numbers based on plaintiff's class definition is 3,831. But even using that lower number, the 2,973, you times that by the 1,392 at issue per plaintiff on average, and you get 4.138 million. And if you use the higher number, the 3,831, then you get 5.3 million. But even considering the lower number, the 4.138 million, then, of course, plaintiffs are seeking treble damages and attorney's fees. And to answer your prior question, the case is Coppell. It's out of the Western District of Washington, and it includes treble damages on a four-calf jurisdiction in a calculating amount at issue. So you concede that treble damages would be available in the event plaintiffs are successful? Well, I do not. No, I do not concede that. But the question is the court's decision. Well, we have to assure ourselves of our own jurisdiction, so that's why the math is important. I do not concede. To Judge Thomas's question. Well, I mean, without treble damages, I don't see how the jurisdictional amount is met. I mean, by my math, if it's even at 2,900, it's short if you just look at actual damages. Well, Your Honor, actually, the number, as I just indicated, the actual number of class members using plaintiff's definition is 3,831. Well, according to you now, by her pleading, it was about 2,900, right? We look at the time of pleading to make this determination, right? Correct. But at the time the time plaintiffs filed their complaint, and you heard them today, they're seeing a class of everyone whose trip was delayed during 2020. Right. I mean, you didn't contest it, so it's just puzzling to me, in a sense, because it seems to me that you had to thread the needle on a couple of issues, for example, saying that the Montana statute that prohibits class actions is preempted, which there's no determination of that in this case. And if it's not preempted, then I don't see how you get there without the trouble damage. Now, that's an ancillary issue, and it may wash out, but it's puzzling to me. Yeah, I understand, Your Honor, and our position would be that there is 3,831 class members, and you simply multiply that by the amount, average amount being sought, 1,392, and you get 5.3 million. So, therefore, the jurisdictional amount is met. And if it's 2,900, you come just short. And then if you count trouble damages. Correct, Your Honor. So, back to what I was saying earlier, plaintiffs start off their entire brief by claiming that Global Travel kept their money. That is false, and they know it's false. They've been told it's false since before this case was even filed. In group travel situations like this, vendors typically do not provide refunds. And if you look in the record at ER 561, you'll see a discovery response from plaintiffs. One thing they didn't include in their excerpts was an email where Global Travel sent an email to Marriott asking for, give us back these monies we've prepaid. Marriott says no, and that's $26,700 that Marriott refuses to give back. And instead, Marriott says, you can have credit. And that's exactly- Mr. McIntosh, I don't think, I mean, we've talked a little bit about this. The, you're not alleging that you provided everything net of your costs back as a refund. I mean, what's your, what policy in the contract were you guided by in paying the amount of the refund? Paying the amount of the refund for travelers that canceled was guided by the standard cancellation policy. But the standard cancellation policy is by the traveler, correct? Excuse me, Your Honor? The standard travel, standard cancellation policy is by the traveler. Correct. And all of these travelers canceled as the district- Well, no, what you said was, I think you told them, we will treat, if you don't accept our offer, we will treat it as a cancellation. Now, what in the contract allows you to do that? The paragraph 7, Your Honor, that says that trips may be rescheduled if they become unsafe. I know it says change in itinerary or accommodation, but I'm using reschedule or I'm going to flub itinerary if I try to say it too many times. What do we make of your friend's point of the bottom two solid bullet points that suggest that the cancellations here would be, would not be triggered by paragraph 7, but here would have to be triggered by the parents canceling? Yes, and that's exactly what happened here. The district court found that, the district court reached a factual conclusion. This is the issue we raised in our 28-J letter. The district court concluded that global travel did not cancel any of these trips. And then when plaintiffs responded and they objected to the magistrate's findings, they said specifically that they did not respond to global travel statement of undisputed facts because the facts set forth by global travel were correct. So this argument about cancellation is something that they waved down below and it's a brand new argument they're making on appeal and it's factually incorrect. So your position is that they rescheduled the itinerary? They rescheduled. And that they canceled in response? Wasn't there at least one school, Sacajawea Bozeman, where it was actually canceled? It was. So there is a cancellation, yeah. Yeah, the trip leader, immediately pandemic comes up, global travel contacts the trip leader and says, we are working to reschedule. The trip leader says, don't worry about it, just give us a 70% refund. So clearly, their choice. The same thing for Smith, one of the other original named plaintiffs. And the other thing we haven't yet talked about is, and this is why this case is inappropriate for class determination, is that global travel offered a whole host of people that could not go on the rescheduled trips, it offered them travel vouchers. So Ms. Swenson at the Castle Rock trip, her trip was rescheduled and 80% of the people that were originally signed up for the Castle Rock trip, either went on the rescheduled trip or they accepted a travel voucher. Mr. McIntosh, I just want to take you back to the cancellation policy and the contract here. Did global travel give the refunds according to the departure date of the trip that never happened? And why isn't that a problem for you under the policy? I'll tell you why it's not a problem for me. It's not a problem for me because global travel gave refunds pursuant to the original departure date. And this new argument the plaintiffs are making on appeal about they should have changed the departure date is not an issue in this case. If you look at- Well, I'm not sure. We're just trying to read the contract. I understand. And we've got these terms in front of us. And it seems like global travels may be having it both ways. If they can say, we're gonna postpone the trip to some new unknown date. We're gonna give you a refund as if the trip that didn't happen, that we've postponed, has already happened. A couple of things, Your Honor. First of all, that allegation is not in the complaint. And when we ask plaintiffs in discovery, how do you contend that plaintiffs breached the contract? They mentioned nothing about that. And that's in the excerpts of record. All the plaintiffs- Well, the contract's before us and we have to figure out what to do. Correct. Correct, Your Honor. I'm just, just before I get there, that's an ER 319. But also that simply makes no sense as a matter, a matter of practicality. I mean, first of all, you need to take us back to the time when all of this occurred. This was COVID. I mean, nobody knew what was going on. And I don't think that, or at least very few trips ever of global travel had ever been postponed before. But even beyond that, I mean, just look at the reality. Let's say, let's say you're 75 days out from someone's trip. And that person contacts Global Travel. And they say, my kid's grades are really going down. I can't go on the trip. I want my, I want my refund. If you take plaintiff's interpretation, Global Travel would have to say, well, I'm sorry, we can't give you that refund right now because this trip might get delayed. And therefore, we would have to recalculate the department. Did any of the plaintiffs at issue here ask for a refund before they heard that the trips were postponed or canceled or delayed? Excuse me, Your Honor? I'm just, I'm just wondering whether this, the hypothetical you're offering us is this case or not. Because I, I don't think, again, I think the theory of the case is that Global Travel canceled or postponed to some later date. Whatever you call it, let's just say postponed. And then in response, they canceled. So it isn't the case where it's a unilateral, I'm worried about COVID. I don't want to travel. They're all reacting to Global Travel moving first and saying, we're going to take this trip later. But then still enforcing the standard cancellation policy that acts as if the trip is going to happen. Exactly, Your Honor. And so, just play that out a little bit. Global Travel, and this, this was, again, during the pandemic. So Global Travel, when it first started to reschedule these trips, it didn't know when it was safe to reschedule them. And in fact, if you look at the record, they had to be rescheduled three or four times. So, again, going back to Judge Thomas's question about the Sacajawea trip, when Global Travel said, okay, we're going to postpone this trip. And then the canceller, the travelers say, well, you know, we want to cancel. Global Travel would have to say, well, I don't know if we can provide you a refund because we don't know when or if it's going to be rescheduled. I mean, it's just, it's just unworkable. The, unless you use the original. At the time of contracting, the only date known was the original date of departure. Correct. There was no other. Correct, Your Honor. Date, right? Not only at the time of contracting, but throughout the history of Global Travel. The departure date was known, and it was the only one that was ever used. Mr. McIntosh, you didn't have an opportunity to address the case NRA Educational Travel Services, the bankruptcy decision in Oregon, because it was raised in the reply brief. Would you address that case? I mean, what it essentially holds is that refunds are owed except to the extent that you've had their non-refundable vendor costs to which you've alluded. Why isn't that the logical construction of what happens under paragraph seven in this? Yeah, yeah, Your Honor, and I'm glad you raised that case. A couple issues about that case. I mean, first of all, in that case, of course, it was a different contract, so you're interpreting different language. But I think the important aspect of that case is that case recognizes that in group travel situations just like this, very often the vendors do not receive refunds. And in fact, in that case, it specifically talks about a trip to Costa Rica and where the company got zero in refunds. And the plaintiffs in that case were only seeking, you know, the amount refunded less overhead. So in other words, less all of the employee expenses, everything else that the travel company was seeking. And that claim has never been made in this case. Plaintiffs from the outset have been making a claim for full refunds. I understand that. I think my question was why isn't that the right answer to this case, that you have to do an accounting of the actual non-refundable vendor fees you made and the difference goes back to the parents? Because of the language of the contract, Your Honor. You're relying on paragraph seven? So you say without cost means you don't have to pay anything. As opposed to without loss to you. I would say that if they cancel, they receive refunds pursuant to the standard cancellation policy, which in this case is typically 50 or 70%. So if your position is if you cancel for a whimsical reason, they're not entitled to any refund. No. If someone can cancel for a whimsical reason, and if they cancel for a whimsical reason, their refund is calculated. The company. Oh, can the company cancel for a whimsical reason? No. Your Honor, I think that, I mean, first of all, again, the district court concluded that Global Travel did not cancel any of these. But beyond that, I mean, we all know that in Montana, there's a duty of good faith and fair dealing read into any contract. And so reasonable is essentially read. Excuse me? How does that help you? Well, because as the district court concluded here, that these trips were rescheduled as soon as it was reasonably safe to do so. So if there was a thunderstorm and Global Travel postponed a trip for a year, I don't think that would be reasonable. But that's not the situation here. We were dealing with a national pandemic. No one knew what was going on. So. Go ahead. I'm sorry. No, no. Well, I know unjust enrichment isn't part of the case right now, but it seems to me that if you made a profit on this, that's a fair claim. In other words, if you, if the canceled, standard cancellation policy, 70 percent, 30 percent, whatever, doesn't equal what your actual loss was, then in fact, you've made a profit on this, even though the trip was canceled or postponed. True. And that's something that's an argument that plaintiffs have never raised because they've always been looking for a 100 percent absolute refund. So frankly, it is not an issue that has been addressed. Go ahead. I'm out of time. I would just encourage the court in this case to examine the record from the district court and compare it to the arguments on appeal. The district court absolutely made the correct decision based on the record before it. Thank you. Thank you. I'll give you two minutes. Thank you, Your Honor. If I could start briefly with the jurisdictional point, because I promised you in the complaint, paragraph five, the request, the assertion of $5 million in damages, paragraph eight, the reference to thousands of tours being sold, paragraph 11A, one named plaintiff's payment of $41.90 for the trip, paragraph 27, the treble damages and attorney's fee request under the Consumer Protection Act. I'd like to turn to some of the issues that my friend raised. First of all, the argument that we waived a challenge to the — we waived arguing that these trips were canceled is not correct. The magistrate's factual background is set forth at 1 ER 23 to 27. In the factual background, the magistrate judge did not say that the trips were not canceled. The discussion of the cancellation versus postponing is in the legal analysis section of the opinion. At 2 ER 94 to 95 are plaintiff's objections to the magistrate's decision which clearly dispute this question of whether the trips were canceled. And also note what I think is really the gist of the point here today. The historical facts here are not disputed. What happened is not disputed. The characterization of whether the trips were canceled or how that applies into the contract is a legal issue which the plaintiffs have consistently disputed. On the standard cancellation policy and its relation to the booking conditions, paragraphs 1, 2, 16, 17, 24 and the policy itself all specifically discuss refund issues. Paragraph 7 does not. And that is a very persuasive reason why it cannot be read to allow global travel to withhold refunds when the trips don't go forward. I would ask the Court again — point the Court again to ER 363, 365, global travel's own emails saying that the trips were canceled. They are trying to have it both ways. When they canceled — when they told the travelers that their trip insurance were voided, they said it was because the trips were canceled due to the pandemic. They used the date of — the original scheduled date to effectuate the refunds, even though that is not what the language of the policy says. It says prior to departure. We would ask the Court to please reverse the decision below and reverse the order on class certification and allow these claims to go forward. Thank you. Thank you. Ms. Assay, Mr. McIntosh, we really appreciate the oral argument presentations here today. The case of Lisa Sides v. Global Travel Alliance is now submitted. That concludes our oral argument calendar for today. We are adjourned. Thank you very much. All rise. This Court, for this session, stands adjourned.
judges: MURGUIA, THOMAS, JOHNSTONE